FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 JUN -7  AM 10: 46

CLERK 1 5 2
MIDDLE D
ORLANDO. FL

DENISE GARRISON,

CASE NO:
6:16-cv-978-orl-37KRS

       Plaintiff,

vs.

CALIBER HOME LOANS, INC.

       Defendant.

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, DENISE GARRISON (hereafter "GARRISON" or "Plaintiff"), an individual files this Complaint for Damages and Incidental Relief against Defendant(s), CALIBER HOME LOANS, INC. (hereafter "CALIBER" or "Defendant"), a Foreign for profit Corporation, and alleges:

### I.
### PRELIMINARY STATEMENT

1.    This is an action brought for violations of 47 U.S.C. §227, *et seq.*, and its implementing regulations at 47 C.F.R. § 64.1200, *et seq.*, known more commonly as the "Telephone Consumer Protection Act" ("TCPA"), which, in part, which provides for a private right of action for unauthorized automated telephone calls; for violations of 15 U.S.C. § 1692, *et seq.*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices in connection

with collecting consumer debts; for violation of 15 U.S.C. §1681 *et seq.,* known more commonly as the "Fair Credit Reporting Act" ("FCRA"); for violations of 12 U.S.C. §2601, *et sequi,* known more commonly as the "Real Estate Settlement Procedures Act" ("RESPA"); for pendent state law claims for violations of Florida Statute §559.55, *et seq.,* known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"); and for Declaratory Relief pursuant to 28 U.S.C. § 2201.

2.     CALIBER is a "special servicer" that provides collections, loan modification, and reporting services[1] on behalf of global private equity firm Lone Star Funds, an entity that solicits institutional capital commitments to purchase, at a substantial discount, large pools of deeply delinquent nonperforming mortgage loans with average delinquency rates exceeding three years.[2] LSF9 Master Participation Trust is a Lone Star Funds investment vehicle used for such mortgage pool purchases.

3.     Despite the extended delinquency rates, Lone Star Funds invests heavily in pools that "have estimated property values no less than 90% of the unpaid principal balance"[3] at an average bid price less than 70% of the unpaid principal balance (hereinafter "Liquidation

---

[1] http://www.lonestarfunds.com/asset-management/specialty-management-firms/, accessed 5/21/2016;  CALIBER is jointly owned by Lone Star Fund V and Loan Star Fund VI.

[2] http://www.fanniemae.com/portal/about-us/media/financial-news/2015/6281.html, accessed 5/21/2016; http://www.marketwired.com/press-release/freddie-mac-executes-its-third-sale-2015-seriously-delinquent-loans-from-its-investment-otcqb-fmcc-2023379.htm; accessed 5/21/2016;

[3] Vulture Capital Hits Home, Connie M. Razza, Sept. 2014, p. 5, https://populardemocracy.org/sites/default/files/HUD.DASP_.RTC_.v15.pdf, pg. 5, accessed 5/21/2016;

Pools"), incentivizing Lone Star to direct CALIBER to quickly foreclose all of the loans in the pools.[4]

4.      Lone Star is known to carefully review every loan it buys, and therefore has knowledge of facts specific to any individual loan, including whether the borrower is represented by counsel, whether the borrower has alleged fraud with respect to the loan documents, and whether a particular loan is over-secured.[5]

5.      As one court noted, Lone Star Funds' owner, John Grayken, is known to exercise primary control over every member, partner, subsidiary, fund or other corporate entity related to Lone Star Funds' complex corporate structure.[6]     John Grayken exercises primary control over CALIBER's operations with respect to servicing loans held in Lone Star Funds' portfolios.

6.      CALIBER employs debt collection tactics designed to bully borrowers to abandon home retention options or waive legal defenses to foreclosure to help Lone Star Funds maximize profits on its Liquidation Pools.

## II.
## JURISDICTION & VENUE

7.      The jurisdiction of this Court arises under 15 U.S.C. § 1692k, 15 U.S.C. § 1681p; 12 U.S.C. §§2605(f), 12 U.S.C. §2614; 47 U.S.C. § 227(b)(3), 28 U.S.C. § 1331, *Mims v. Arrow*

---

[4] http://www.nytimes.com/2008/07/30/business/worldbusiness/30iht-lonestar.1.14878273.html?_r=3&, accessed 5/25/2016 (vulture investors buy the loans and then seek to recoup the value by workouts, foreclosure, or holding the loan until it can be sold);

[5] http://www.nytimes.com/2008/07/30/business/worldbusiness/30iht-lonestar.1.14878273.html?_r=3&, accessed 5/25/2016;

[6] http://law.justia.com/cases/new-jersey/appellate-division-published/2011/a3727-09-opn.html, accessed 5/25/2016;

*Fin. Servs., LLC*, —— U.S. ——, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012); and for pendant state law claims under 28 U.S.C. § 1367.   Declaratory relief is available pursuant to 28 U.S.C. §§2201-2202.   Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) and (c), as the claims arose from Defendant's acts perpetrated therein upon the Plaintiff.

## III.
## STANDING

8.     Plaintiff has suffered injuries in fact that are traceable to Defendant's conduct and that are likely to be redressed by a favorable decision in this matter.   Specifically, Plaintiff suffered a concrete injury to her reputation and her privacy as a result of Defendant's furnishing false   or confidential information to third parties in connection with its attempt to collect an alleged debt from the Plaintiff.   Plaintiff has suffered concrete informational injury as a result of Defendant's failure to provide truthful information in connection with its attempt to collect an alleged debt from Plaintiff.   Plaintiff has suffered a concrete injury in the form of (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of Plaintiff's cell phone, and (3) wasting Plaintiff's time and causing the risk of personal injury due to interruption and distraction as a result of Defendant's nonconsensual calls to her cellular telephone in connection with its attempt to collect an alleged debt from the Plaintiff.

## IV.
## COMPOSIT EXHIBITS

9.     Attached to this Complaint are Composite Exhibits.  The Composite Exhibits are incorporated and made a part hereof as Composite Exhibit "A" and are given Bates numbers on the bottom of each page.  Any reference made to Composite Exhibit "A" shall be as follows: **"Composite Exhibit "A" page ___"**

## V.
## ALLEGATIONS AS TO PARTIES

10.     At all times material hereto, Plaintiff, Denise GARRISON ("GARRISON"), was *sui juris* and a resident of Titusville, Brevard County, Florida, in the United States of America.

11.     At all times material hereto, GARRISON has been "the object of collection activity arising from consumer debt."

12.     At all times material hereto, GARRISON was a "consumer" as said term is defined under 15 U.S.C. §1692a(3).

13.     At all times material hereto, Defendant, Caliber Home Loans, Inc., was and is a Delaware for profit Corporation engaged, *inter alia*, in the business of providing specialty loan servicing on behalf of owners of pools of delinquent Florida mortgage loans under National Mortgage Lender Servicer License Number 15622, and Florida Mortgage Lender Servicer License Number MLD473.   CALIBER'S principal place of business is at 3701 Regent Blvd., Suite 200, Irving, Texas 75063, in the United States of America.   Its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

14.     At all times material hereto, CALIBER was a "debt collector" as said term is defined under 15 U.S.C. §1692a(6). *See*, e.g. *Bridge v. Ocwen Federal Bank*, FSB, 681 F.3d 355 (6th Cir. 2012).   CALIBER is a Florida Consumer Collection Agency, License Number CCA9901554.

15.     At all times material hereto, CALIBER was engaged in the regular collection of consumer debts alleged to be due to another using United States mail or telephone.

## VI.
## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16.     All conditions precedent to the bringing of this action have been performed, waived or excused.

### i.                                    Details Concerning the Foreclosure Action

17.     On September 23, 2008, GARRISON, as a consumer, executed and delivered a promissory note and a mortgage securing repayment of the promissory note (the "Subject Debt") in connection with the purchase of GARRISON'S personal family residence located at 3955 Hidden Hills Drive, Titusville, Florida 32796 (the "GARRISON Residence").

18.     Under the terms of the note and mortgage, GARRISON was required to pay a certain sum of money to Bank of America, N.A. or its assignee on a monthly basis.  The purported obligation to pay money under the note and mortgage arose from the transaction to purchase the GARRISON Residence, which was at all times used by GARRISON and her sons for personal, family and household purposes (i.e., the GARRISONS lived at the GARRISON Residence).

19.     On April 4, 2010, Bank of America, N.A., sued GARRISON in the Eighteenth Judicial Circuit Court in and for Brevard County, Florida, to foreclose the mortgage secured by GARRISON Residence in a case styled *Bank of America v. GARRISON*, Case Number: 05-2010-CA-26735-XXXX-XX (hereafter "Foreclosure Action").  Composite Exhibit A, pages 1 - 25).

20.     In the Foreclosure Action, Bank of America, N.A., alleged that GARRISON defaulted on the Subject Debt on December 1, 2009, and on all subsequent payments, and that Bank of America, N.A. was due the principal sum of $292,143.32, plus interest from November

1, 2009, title search expenses, unpaid taxes, insurance premiums, accumulated late charges, and inspection fees. (Composite Exhibit A, p. 1, para. 4 - 9).

21.     Bank of America, N.A. alleged that it owned and held the note evidencing the Subject Debt. (Composite Exhibit A, p. 1, para. 5).

22.     In the Foreclosure Action, Bank of America, N.A., filed what it called the "original note". (Composite Exhibit A, pages 26 - 30). The "original note" was a fraudulent document, which was ascertainable from the face of the "original note" according to expert witness Steven Drexler. Mr. Drexler had access to the "original note" by viewing it in the Clerk's office with the use of special instruments. (Composite Exhibit A, pages 39 - 52).

23.     The mortgage instrument looks similar to the "original note," bearing the same indicia of fraud on its face.

24.     On July 14, 2014, through her foreclosure counsel, George Gingo, GARRISON moved for summary judgment in the Foreclosure Action, on the basis that the "original note" that Bank of America, N.A., filed in the Foreclosure Action was actually a fraudulent document. (Composite Exhibit A, pages 31 - 52). GARRISON supported her motion with an affidavit from expert witness Steven Drexler.

25.     On August 7, 2014, Bank of America, N.A., moved for return of the "original note" from the Clerk's office so that it could examine the "original note" to see if it was fraudulent. (Composite Exhibit A, pages 53 - 57).

26.     On August 8, 2014, GARRISON filed an opposition to Bank of America's motion to return the "original note." (Composite Exhibit A, pages 58 - 60). On August 14, 2014, over

GARRISON's objections the Circuit Court granted Bank of America, N.A.'s motion. (Composite Exhibit A, pages 61 - 62). The fraudulent note was returned to Bank of America, N.A.

27.     On October 23, 2014, Bank of America, N.A. voluntarily dismissed the Foreclosure Action without prejudice. (Composite Exhibit A, pages 63 - 64).

28.     Because the note and mortgage evidencing and securing the repayment of the Subject Debt are fraudulent, there is no person entitled to enforce the subject debt pursuant to Florida Statutes § 673.3011.

29.     Because of the fraud allegations, GARRISON continued to engage attorney Gingo's representation with respect to the Subject Debt after the dismissal through the date of this action.

30.     GARRISON did not re-authorize Bank of America, N.A. to contact her directly for any reason regarding the Subject Debt after the dismissal.

### ii.     Details Concerning Ownership and Servicing Rights Transfer to LSF9 and Caliber

31.     On October 6, 2015 Bank of America, N.A., notified GARRISON that on November 1, 2015, the servicing of the subject debt would be transferred from Bank of America, N.A. to CALIBER. (Composite Exhibit A, pages 65 - 66).

32.     On October 23, 2015, Bank of America, N.A., notified GARRISON that the subject debt had been sold to LSF9 Master Participation Trust. (Composite Exhibit A, page 67 - 68).

33.     According to the Brevard County Property Appraiser, the market value of GARRISON'S Residence as of January 1, 2015, was Two Hundred Forty-Three Thousand, Four Hundred Eighty Dollars ($243,480.00), or eighty-three percent (83%) of the unpaid principal balance.

34.     According to Zillow, the current market value of the GARRISON Residence is Three Hundred Forty-Five Thousand Six Hundred Eighty-Five Dollars ($345,685.00) or one hundred forty-two percent (142%) of the unpaid principal balance.

35.     Lone Star Funds reviewed the servicing documents and collateral file for GARRISON's loan on or before October 23, 2015, including the Foreclosure Action documents and correspondence sufficient to give Lone Star Funds notice that

a) GARRISON was represented by counsel in relation to the subject debt, and

b) GARRISON did not consent to being directly contacted with respect to the subject debt, and

c) the validity of the subject debt was disputed, and

d) there were questions about the collectability of the subject debt, and

e) GARRISON did not list her cellular number (321) 216-7132, in her loan application.

36.     CALIBER received the servicing documents and collateral file for GARRISON's loan on or before November 2015, including the Foreclosure Action documents and correspondence sufficient to give CALIBER notice that

a) GARRISON was represented by counsel in relation to the subject debt, and

b) GARRISON did not consent to being directly contacted with respect to the subject debt, and

c) the validity of the subject debt was disputed, and

d) there were questions about the collectability of the subject debt, and

e) GARRISON did not list her cellular number (321) 216-7132, in her loan application.

37.    Lone Star Funds directed CALIBER to liquidate GARRISON'S loan to maximize the fund's profits.

### iii. Details Concerning Caliber's Communications to GARRISON

38.    On November 10, 2015, CALIBER sent an initial notice to GARRISON that CALIBER was the new servicer for the Subject Debt. The initial notice did not contain information about the amount of the debt nor about GARRISON's dispute rights.

39.    On November 13, 2015, CALIBER sent directly to GARRISON the first dunning letter regarding the Subject Debt. The letter purported to disclose the amount of the debt but contained tiny disclaimers at the bottom of the letter that the disclosed amount may not include interest, late charges, other charges, fees, costs, advances, escrow advances, servicing fees & costs, attorney's fees and collection costs.

40.    Beginning November 2015 through present, CALIBER has placed in excess of fifty (50) calls to GARRISON's cellular telephone with respect to the subject debt. Each completed call resulted in a short pause and a pre-recorded message, indicative of the use of an autodialer.

41.     GARRISON has never given prior express consent to CALIBER to contact her in any manner for any reason, and she has never given CALIBER her cellular telephone number.

42.     Whenever GARRISON answered calls initiated by CALIBER, she experienced a brief pause before hearing a pre-recorded voice message.

43.     On or about November 10, 2015, and in response to the first and every connected CALIBER-initiated call thereafter, GARRISON verbally notified CALIBER that she was represented by counsel with respect to the subject debt and verbally demanded CALIBER stop calling her directly.

44.     On March 18, 2016, CALIBER sent GARRISON a mortgage statement and stated "As of 01/18/2016, you are 2299 days delinquent on your mortgage." (Composite Exhibit A, page 69 - 71). The total sum CALIBER attempted to collect in its March, 2016 mortgage statement exceeds Florida's five-year statute of limits by approximately sixteen (16) months. The statement advised GARRISON that the loan had been "referred to Foreclosure."

45.     On April 5, 2016, CALIBER received a written notice of error containing a request for information, notice of representation, dispute notice, cease contact demand and debt validation demand from GARRISON's attorney, George Gingo (the "RESPA Letter"). (Composite Exhibit A, pages 75 - 76).

46.     On April 7, 2016, CALIBER sent a notice to GARRISON acknowledging receipt of correspondence dated April 6, 2016 (referring to the RESPA Letter, dated March 29, 2016). (Composite Exhibit A, page 77).

47.     On April 8, 2016, CALIBER sent a letter to attorney Gingo acknowledging that Gingo represented GARRISON with respect to the Subject Debt.  (Composite Exhibit A, pages 78 - 79).

48.     On April 8, 2016, CALIBER sent a letter to GARRISON acknowledging her cease communications demand.  (Composite Exhibit A, pages 80).

49.     On April 14, 2016, CALIBER provided a payoff notice to GARRISON at Gingo's law office, seeking a sum for principal and interest that included collection of amounts beyond the five-year statute of limits. (Composite Exhibit A, page 81)

50.     On or about April 14, 2016, a CALIBER agent attempted to personally serve GARRISON with paperwork at GARRISON's home.  GARRISON was home and heard the agent state that she was from CALIBER and that she needed to meet with GARRISON to serve her papers.  There was no pending litigation and CALIBER likely was not serving legal process during this visit.

51.     On or about April 15, 2016, a CALIBER agent came to GARRISON's home and GARRISON's minor son answered the door and met the CALIBER agent.  CALIBER's agent told GARRISON's son that she had to personally talk to GARRISON about the mortgage loan which had not been paid and she had to serve papers on GARRISON.  There was no pending litigation and CALIBER likely was not serving legal process during this visit.

52.     On April 17, 2016, a CALIBER agent posted papers purporting to be loan modification documents on GARRISON's door.  (Composite Exhibit A, pages 82 - 89).

53.     As of the date of this action, there is no pending litigation and GARRISON has not been served legal process with respect to the debt CALIBER is attempting to collect.

**iv. Details Concerning Caliber's Furnishing of Inaccurate Credit Information**

54.     On March 14, 2016, GARRISON accessed her Experian credit report and found that CALIBER had reported inaccurate information on her credit report, misstating the amount due. (Composite Exhibit A, pages 72 - 73).

55.     On March 14, 2016, GARRISON accessed her Experian credit report and found that CALIBER had reported inaccurate information on her credit report, misstating the amount due. (Composite Exhibit A, pages 72 - 73).

56.     On March 30, 2016, GARRISON disputed the inaccurate information (the "Dispute Notice") with respect to the Subject Debt in writing to the consumer reporting agencies and to CALIBER directly. (Composite Exhibit A, page 74). GARRISON had previously disputed the inaccurate information with respect to the Subject Debt in writing to the consumer reporting agencies and to Bank of America, N.A. in February 2016. (Composite Exhibit A, page 74)

57.     Upon receipt of the Dispute Notice on April 5, 2016, CALIBER failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on GARRISON's consume report with respect to the Subject Debt. (Composite Exhibit A, pages 75 - 76).

58.     In response to GARRISON'S Dispute Notice, CALIBER asserted that it was furnishing accurate information to the credit reporting agencies and that no changes would be made with respect to the information CALIBER was furnishing to the credit reporting agencies.

## VII.
## CAUSES OF ACTION

### COUNT I—ACTION FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227, *et seq.*)
### (47 C.F.R. Part 64, Subpart L)

59.     This is an action for damages for violation of 47 U.S.C. § 227, *et sequi*, known more commonly as the "Telephone Consumer Protection Act" (the "TCPA") and the regulations promulgated thereunder, brought herein pursuant to 47 U.S.C. § 227(b)(3).

60.     Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

61.     Notwithstanding any attempt by CALIBER to infer prior express consent by virtue of any pre-existing consent between GARRISON and Bank of America, the law is clear that prior consent can be verbally revoked. *Osorio v. State Farm Bank*, 746 F.3d 1242 (11th Cir. 2014). Using the *Osorio* logic, if a called party's authority to give consent lapses with respect to a subscriber's cellular number when such number is reassigned, so must a caller's authority to initiate a call lapse when the subscriber's account for which consent was previously granted is reassigned. *See Id.* at 1251, *citing Soppet v. Enhanced Recover Co., LLC*, 679 F.3d 637, 640-41 (7th Cir. 2010). The previously authorized caller does not possess the authority to assign the called party's consent. *Lee v. Gulf Coast Collection Bureau, Inc.*, ___ F.3d ___, Case No. 8:13-

cv-2276-T-24-MAP (M.D. Fla. 2014), *citing In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2008 WL 65485, at 3 (F.C.C. Jan 4, 2008) ("prior express consent provided to a particular creditor will not entitle that creditor (or third party collector) to call a consumer's wireless number on behalf of other creditors, including on behalf of affiliated entities").

62.     At all times material hereto, the CALIBER used an "automatic telephone dialing system" to initiate calls to GARRISON's cellular telephone number (321) 216-7132, as said term is defined under 47 U.S.C. §227(a)(1).

63.     At all times material hereto, the CALIBER used an "artificial or prerecorded voice" to initiate calls to GARRISON's cellular telephone number (321) 216-7132, and GARRISON experienced an initial pause each time she answered a CALIBER-initiated call before she heard the artificial or pre-recorded voice message.

64.     At all times material hereto, GARRISON's telephone number (321) 216-7132, was assigned to a "cellular telephone service" for which GARRISON was "charged for the call[s]" CALIBER placed to GARRISON's telephone number as said terms are defined under 47 U.S.C. § (b)(1)(A)(iii).

65.     At all times material hereto, GARRISON was the "called party" from whom CALIBER must have obtained "prior express consent" before initiating a proscribed call to GARRISON's telephone number pursuant to *Osoria v. State Farm Bank*, 746 F.3d 1242 (11th Cir. 2014).

66.     At all times material hereto, CALIBER initiated proscribed calls containing pre-recorded messages to GARRISON's cellular telephone number for reasons other than to advise her of an emergency and other than for another authorized exception.

67.     In furtherance of its debt collection activities, Defendant(s) violated the TCPA, 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(1) with respect to all auto-dialed and pre-recorded voice calls CALIBER initiated to GARRISON's cellular telephone number (321) 216-7132, as follows:

a.      By failing to obtain GARRISON's prior express consent to receive such calls before initiating the calls, in contravention of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii)]; and

b.      By initiating such calls even though CALIBER knew GARRISON had expressly revoked her consent to receiving any direct communication, including calls to her cellular telephone number, in contravention of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii); and

c.      By initiating such calls using a predictive dialer as proscribed by *Conglio v. Bank of America*, 8:14-cv-01628; 2014 WL 6882294 (M.D.Fla., 12/4/2014), *see also*, 2008 TCPA Order 23 FCC Rcd. at 566, para. 12, *and see* 2003 TCPA Order, 18 FCC RCD. AT 14091, Para. 131);

68.     By virtue of the aforesaid unintentional violations of the 47 U.S.C. § 227(b)(1) and its implementing regulation, Defendant, CALIBER, is liable to Plaintiff, GARRISION, for the greater of actual monetary loss from each violation or statutory damages in the amount of $500.00 per each unintentional or unknowing violation pursuant to 47 U.S.C. § 227(b)(3)(B),

$1,500.00 per each intentional or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(C), as well as to injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A).

69.     Had CALIBER conducted all aspects of the initiated calls lawfully, GARRISON would not have lost the use of her cellular device during the time such calls were being made, she would not have had to take breaks from her work or family life to answer the calls, and she would not have had to pay for or lost the benefit of cellular phone minutes expended receiving, answering, retrieving voice messages, or otherwise handling such calls, when such minutes could have been allocated for consensual calls, loss of access to accurate account information, and she would not have suffered frustration, irritation, loss of privacy, mental pain and shock, aggravation, humiliation and embarrassment in an amount to be proven at trial.

70.     As a direct and proximate result of CALIBER's violations of the 47 U.S.C. § 227(b)(1) and its implementing regulation in furtherance of its debt collection activities, GARRISON and other consumers have been damaged and GARRISON has suffered actual economic losses in an amount to be proven at trial.

### Prayer For Relief
### (47 USC §227(b)(3))

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment against Defendant(s), CALIBER HOME LOANS, INC., for:

A.      Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A); and

B.      The greater of actual damages or statutory damages in the amount of $500.00 per each unintentional violation pursuant to 47 U.S.C. § 227(b)(3)(B); and

C.      The greater of actual damages or statutory damages in the amount of $1,500.00 per each willful or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(C); and

D.     Such other and further relief as justice may require and allow, including interest.

## COUNT II—ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692, et sequi)

71.     This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

72.     Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

73.     At all times material hereto, Subject Debt was a "debt" as said term is defined under 15 U.S.C. § 1692a(5).

74.     At all times material hereto, GARRISON was a "consumer" as said term is defined under 15 U.S.C. §1692a(3).

75.     At all times material hereto, Bank of America, N.A. or its purported assignee was a "creditor" as said term is defined under 15 U.S.C. §1692a(4).

76.     At all times material hereto, CALIBER was a "debt collector" as said term is defined under 15 U.S.C. §1692a(6).

77.     At all times material hereto, CALIBER was engaged in the regular collection of consumer debts using United States mail or telephone.  CALIBER regularly attempts to collect consumer debts alleged to be due to another.

78.    At all times material hereto, CALIBER knew GARRISON's location information because GARRISON resides at the collateral property purportedly securing repayment of the Subject Debt CALIBER was attempting to collect.

79.    In furtherance of its debt collection activities, CALIBER repeatedly violated multiple provisions of the FDCPA, 15 U.S.C. § 1692, *et sequi.,* as follows:

a.    By disclosing confidential information about the Subject Debt to GARRISON's minor son without GARRISON'S consent, in contravention of 15 U.S.C. § 1692b(2); and

b.    By communicating with GARRISON's minor son about the nature and delinquency status of Subject Debt even though CALIBER knew or could have readily ascertained that GARRISON was represented by an attorney with respect to the debt, in contravention of 15 U.S.C. § 1692b(6); and

c.    By directly communicating with GARRISON via telephone and U.S. Mail in connection with the Subject Debt when CALIBER knew GARRISON was represented by attorney Gingo in connection with the Subject Debt, in contravention of 15 U.S.C. § 1692c(a)(2); and

d.    By communicating with GARRISON's minor son about nature and delinquency status of the Subject Debt when CALIBER knew GARRISON was represented by attorney Gingo in connection with the Subject Debt, in contravention of 15 U.S.C. § 1692c(b); and

e.    By failing to cease direct communication with GARRISON with respect to the Subject Debt after GARRISON notified CALIBER that she refused to pay the

debt and CALIBER must cease all communication with her with respect to the Subject Debt, in contravention of 15 U.S.C. § 1692c(c); and

f.      By furnishing inaccurate information to credit reporting agencies that GARRISON owed a debt when CALIBER was not entitled to enforce the Subject Debt by virtue of the fraudulent note and mortgage, in contravention of 15 U.S.C. § 1692c(b); and

g.      By furnishing inaccurate information to credit reporting agencies that GARRISON owed an amount for the Subject Debt when said amount was erroneous as it included sums beyond the five-year statute of limitations set forth in Florida Statutes 95.11.   (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692c(b); and

h.      By mailing periodic statements to GARRISON that indicate she owes a debt that CALIBER was not legally entitled to enforce pursuant to Florida Statutes 673.3011, because the Note and Mortgage were fraudulent, in contravention of 15 U.S.C. § 1692e; and

i.      By mailing periodic statements to GARRISON that misstated an amount due for the debt that was erroneous as it included sums beyond the five-year statute of limitations set forth in Florida Statutes 95.11.   (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015);

*Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692e; and

j.   By mailing the April 14, 2016 payoff letter to GARRISON that indicate she owes a debt that CALIBER was not legally entitled to enforce pursuant to Florida Statutes 673.3011, because the Note and Mortgage were fraudulent, in contravention of 15 U.S.C. § 1692e; and

k.   By mailing the April 14, 2016 payoff letter to GARRISON that misstated an amount due for the debt that was erroneous as it included sums beyond the five-year statute of limitations set forth in Florida Statutes 95.11.  (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692e; and

l.   By posting a document on GARRISON'Ss door after CALIBER received a cease contact demand from GARRISON'S attorney, where said document purported to be a loan modification that, had GARRISON executed, would have destroyed her statute of limits defense, in contravention of 15 U.S.C. § 1692e; and

m.   By communicating with GARRISON's minor son about nature and delinquency status of the Subject Debt when CALIBER knew GARRISON was represented by attorney Gingo in connection with the Subject Debt, in contravention of 15 U.S.C. § 1692e; and

n.   By falsely representing the character, amount, or legal status of the Subject Debt to GARRISON, in contravention of 15 U.S.C. § 1692e(2)(A); and

o.   By falsely representing the character, amount, or legal status of the Subject Debt to GARRISON's minor son, in contravention of 15 U.S.C. § 1692e(2)(A); and

p.   By falsely representing the character, amount, or legal status of the Subject Debt to credit reporting agencies, in contravention of 15 U.S.C. § 1692e(2)(A); and

q.   By furnishing inaccurate information to credit reporting agencies that GARRISON owed a debt when CALIBER knew CALIBER was not entitled to enforce the Subject Debt by virtue of the fraudulent note and mortgage, in contravention of 15 U.S.C. § 1692e(8); and

r.   By furnishing inaccurate information to credit reporting agencies that GARRISON owed an amount for the Subject Debt when CALIBER knew said amount was erroneous as it included sums beyond the five-year statute of limitations set forth in Florida Statutes 95.11.  (See *Hicks v. Wells Fargo Bank, N.A.*, 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692e(8); and

s.   By failing to furnish information to credit reporting agencies that GARRISON disputed the Subject Debt because CALIBER was not entitled to enforce the Subject Debt by virtue of the fraudulent note and mortgage, in contravention of 15 U.S.C. § 1692e(8); and

t.      By failing to furnish information to credit reporting agencies that GARRISON

disputed the Subject Debt because CALIBER was not entitled to enforce some

portion of the Subject Debt by virtue of the statute of limitations, in contravention

of 15 U.S.C. § 1692e(8); and

u.      By mailing periodic statements to GARRISON that indicate she owes a debt that

CALIBER was not legally entitled to enforce pursuant to Florida Statutes

673.3011, because the Note and Mortgage were fraudulent, in contravention of 15

U.S.C. § 1692e(10); and

v.      By mailing periodic statements to GARRISON that misstated an amount due for

the debt that was erroneous as it included sums beyond the five-year statute of

limitations set forth in Florida Statutes 95.11.  (See *Hicks v. Wells Fargo Bank*,

*N.A.*, 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015);

*Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v.

Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692e(10);

and

w.      By mailing the April 14, 2016 payoff letter to GARRISON that indicate she owes

a debt that CALIBER was not legally entitled to enforce pursuant to Florida

Statutes 673.3011, because the Note and Mortgage were fraudulent, in

contravention of 15 U.S.C. § 1692e(10); and

x.      By mailing the April 14, 2016 payoff letter to GARRISON that misstated an

amount due for the debt that was erroneous as it included sums beyond the five-

year statute of limitations set forth in Florida Statutes 95.11. (See *Hicks v. Wells*

*Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979)), in contravention of 15 U.S.C. § 1692e(10); and

y.      By posting a document on GARRISON'Ss door after CALIBER received a cease contact demand from GARRISON'S attorney, where said document purported to be a loan modification that, had GARRISON executed, would have destroyed her statute of limits defense, in contravention of 15 U.S.C. § 1692e(10); and

z.      By communicating with GARRISON's minor son about nature and delinquency status of the Subject Debt when CALIBER knew GARRISON was represented by attorney Gingo in connection with the Subject Debt, in contravention of 15 U.S.C. § 1692e(10); and

aa.     By sending agents to GARRISON'S home to attempt to collect a debt after CALIBER received GARRISON'S cease contact demand, in contravention of 15 U.S.C. § 1692e(10); and

bb.     By sending an agent to GARRISON'S home to represent to GARRISON that CALIBER had legal papers to serve upon GARRISON, when in fact no legal action was pending, in contravention of 15 U.S.C. § 1692e(13);

cc.     By using unfair or unconscionable means to collect or attempt to collect the subject debt by posting a document on GARRISON'S door after CALIBER received a cease contact demand from GARRISON'S attorney, where said document purported to be a loan modification that, had GARRISON executed,

would have destroyed her statute of limits defense, in contravention of 15 U.S.C. § 1692f; and

dd.   By using unfair or unconscionable means to collect or attempt to collect the subject debt by communicating with GARRISON's minor son about nature and delinquency status of the Subject Debt without GARRISON'S consent and with knowledge that GARRISON was represented by counsel with respect to the Subject Debt, in contravention of 15 U.S.C. § 1692f; and

ee.   By using unfair or unconscionable means to collect or attempt to collect the Subject Debt by sending periodic statements claiming the loan was "referred to Foreclosure," sending payoff letters, furnishing known inaccurate information to credit reporting agencies, and withholding known disputed information from credit reporting agencies, in contravention of 15 U.S.C. §1692f; and

ff.   With respect to GARRISON'S dispute of the Subject Debt, continuing to attempt to collect the disputed portion Subject Debt from GARRISON by sending a CALIBER agent to GARRISON'S home to attempt to collect the Subject Debt without first verifying the debt, in contravention of 15 U.S.C. § 1692g(b).

80.   As a direct and proximate result of the Defendant's violations of the FDCPA, 15 U.S.C. § 1692, *et sequi*, in connection with its debt collection activities, GARRISON experienced loss of access to accurate account information, frustration, irritation, loss of privacy, diminished credit score, mental pain and shock, suffering, aggravation, humiliation and embarrassment in an amount to be proven at trial.

81.    By virtue of the aforesaid violations of the FDCPA, 15 U.S.C. § 1692, *et sequi*, Defendant(s), CALIBER, is liable to Plaintiff, GARRISON for actual damages in an amount to be determined at trial together with statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k.

82.    Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to recover reasonable attorney fees and costs in an amount to be determined by the Court.

83.    Plaintiff has retained the undersigned law office to represent his or her interest herein and is obligated to pay said law office a reasonable fee for its services.

### *Prayer For Relief*
### (15 USC §1692k)

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment against Defendants, CALIBER Home Loans, Inc., a foreign corporation, for actual and statutory damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

### COUNT III—ACTION FOR WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. §1681, *et seq.*)

84.    This is an action for damages for willful violation of 15 U.S.C. § 1681, *et sequi*, known more commonly as the "Fair Credit Reporting Act" (the "FCRA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. §1681p.

85.    Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

86.     At all times material hereto, CALIBER was a "person" as said term is defined under 15 U.S.C. §1681a and also a "furnisher" of credit information to consumer reporting agencies.

87.     At all times material hereto, GARRISAON was a "consumer" as said term is defined under 15 U.S.C. §1681a.

88.     Pursuant to the FCRA, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

89.     Pursuant to the FCRA, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as GARRISON. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

90.     The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher such as CALIBER must report the results to other agencies which were supplied such information.

91.     In furtherance of its debt collection activities, CALIBER violated the FCRA, 15 U.S.C. §1681s-2 with respect to the disputed Subject Debt as follows:

a.     By publishing the delinquency information;

b.     By failing to fully and properly investigate GARRISON's dispute with respect to the delinquency information; and

      b.     By failing to review all relevant information regarding the delinquency information; and

      c.     By failing to correctly report results of an accurate investigation to the credit reporting agencies.

92.     As a direct and proximate result of CALIBER's conduct, action and inaction, in violations of the FCRA, 15 U.S.C. §1681s-2(a), GARRISON suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials in an amount to be proven at trial.

93.     Pursuant to 15 U.S.C. §1601n, the conduct, action and inaction of CALIBER was willful, rendering CALIBER liable for actual, statutory and punitive damages in an amount to be determined by a jury.

94.     Pursuant to 15 U.S.C. §1601n, GARRISON is entitled to recover reasonable costs and attorney's fees from CALIBER in an amount to be determined by the Court.

95.     GARRISON has retained the undersigned law office to represent his or her interest herein and is obligated to pay said law office a reasonable fee for its services.

### *Prayer For Relief*
### (15 USC §1601n, §1681o)

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment in her favor against Defendants, Caliber Home Loans, Inc., a foreign corporation, for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §1681n.

## COUNT IV—ACTION FOR NEGLIGENT VIOLATION OF THE
## FAIR CREDIT REPORTING ACT (15 U.S.C. §1681, *et sequi.*)

96.     This is an action for damages for willful violation of 15 U.S.C. § 1681, *et sequi*,

known more commonly as the "Fair Credit Reporting Act" (the "FCRA") and the regulations

promulgated thereunder, brought herein pursuant to 15 U.S.C. §1681p.

97.     Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through

58, above as if set forth hereat in full.

98.     At all times material hereto, CALIBER was a "person" as said term is defined

under 15 U.S.C. §1681a and also a "furnisher" of credit information to consumer reporting

agencies.

99.     At all times material hereto, GARRISON was a "consumer" as said term is

defined under 15 U.S.C. §1681a.

100.    Pursuant to the FCRA, all persons who furnished information to reporting

agencies must participate in re-investigations conducted by the agencies when consumers dispute

the accuracy and completeness of information contained in a consumer credit report.

101.    Pursuant to the FCRA, a furnisher of disputed information is notified by the

reporting agency when the agency receives a notice of dispute from a consumer such as

GARRISON.  The furnisher must then conduct a timely investigation of the disputed information

and review all relevant information provided by the agency.

102.    The results of the investigation must be reported to the agency and, if the

investigation reveals that the original information is incomplete or inaccurate, the information

from a furnisher such as CALIBER must report the results to other agencies which were supplied such information.

103.    After receiving the Dispute Notice from the CRAs, CALIBER negligently failed to conduct its reinvestigation in good faith.

104.    A reasonable investigation would require a furnisher such as CALIBER to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

105.    The conduct, action and inaction of CALIBER was negligent, entitling GARRISON to recover actual damages under 15 U.S.C. §1681o.

106.    As a direct and proximate result of CALIBER's conduct, action and inaction, in violation of the FCRA, 15 U.S.C. §1681s-2(a), GARRISON suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials in an amount to be proven at trial.

107.    Pursuant to 15 U.S.C. §1601n and 15 U.S.C. §1601o, GARRISON is entitled to recover reasonable costs and attorney's fees from CALIBER in an amount to be determined by the Court.

108.    GARRISON has retained the undersigned law office to represent his or her interest herein and is obligated to pay said law office a reasonable fee for its services.

**Prayer For Relief**
**(15 USC §1601n, §1681o)**

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment in her favor against Defendants, Caliber Home Loans, Inc., a foreign corporation, for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §1681o.

## COUNT V—ACTION FOR VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (12 U.S.C. §2601, *et seq.*) (Regulation X, 12 C.F.R. 1024)

109.    This is an action for damages for violation of 12 U.S.C. § 2601, *et sequi*, known more commonly as the "Real Estate Settlement Procedures Act" (the "RESPA") and the regulations promulgated thereunder, brought herein pursuant to 12 U.S.C. § 2605.

110.    Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

111.    At all times material hereto, the Subject Debt involved a "federally related mortgage loan" as said term is defined under 12 U.S.C. §2602(1).

112.    At all times material hereto, CALIBER was a "servicer" as said term is defined under 12 U.S.C. §2605(i)(2).

113.    At all times material hereto, the RESPA Letter was a "qualified written request" as said term is defined under 12 U.S.C. §2605(e)(B).

114.    In furtherance of its debt collection activities, CALIBER violated RESPA, 12 U.S.C. § 2605(e)(2) and Regulation X with respect to serving the Subject Debt by failing to take action as follows:

        a.    By failing to make appropriate corrections to GARRISON's account, including but not limited to crediting the account for any principal, interest, late charges,

fees, escrow advances, penalties, etc., the enforcement of which are barred by the applicable statute of limitations;

b.    By failing to transmit to GARRISON written notification of CALIBER's appropriate corrections;

c.    By filing to provide GARRISON, after conducting an investigation, with a written explanation or clarification, including information requested by GARRISON or an explanation of why the information was unavailable or cannot be obtained by CALIBER.

115.    In furtherance of its debt collection activities, CALIBER violated RESPA, 12 U.S.C. §2605(e)(3) by providing information to a consumer reporting agency within a sixty (60) day period beginning on the date CALIBER received GARRISON'S qualified written request related to a dispute regarding GARRISON's payments, information with regard to any undue payment owed by GARRISON, related to such period or qualified written request.

116.    As a direct and proximate result of CALIBER's above-described conduct in violations of the RESPA requirements, GARRISON suffered damage including but not necessarily limited to loss of access to accurate account information, frustration, irritation, loss of privacy, diminished credit score, mental pain and shock, suffering, aggravation, humiliation and embarrassment in an amount to be proven at trial.

117.    As a direct and proximate result of CALIBER's above-described conduct in violations of the RESPA requirements, CALIBER is liable to GARRISON for actual damages in an amount to be determined by a jury, together with statutory damages up to the amount of $2,000.00, pursuant to 12 U.S.C. §2605(f)(1).

118.    Pursuant to 12 U.S.C. §2605(f)(3), GARRISON is entitled to recover reasonable costs and attorney's fees from CALIBER in an amount to be determined by the Court.

119.    GARRISON has retained the undersigned law office to represent his or her interest herein and is obligated to pay said law office a reasonable fee for its services.

### *Prayer For Relief*
### *(12 USC §2605(f))*

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment in her favor against Defendants, Caliber Home Loans, Inc., a foreign corporation, for actual and statutory damages, together with attorney's fees and court costs pursuant to 12 U.S.C. §2605.

### COUNT VI—ACTION FOR DECLARATORY RELIEF
### (28 U.S.C. § 2201)

120.    This is an action for Declaratory Relief brought herein pursuant to 28 U.S.C. § 2201.

122.    Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

123.    The State of Florida only authorizes residential mortgage foreclosure pursuant to Florida Statutes 673.3011. Because the Note and Mortgage were fraudulent, there was no debt that CALIBER could legally enforce.

124.    CALIBER has told GARRISON that she owes it a debt and that the debt owed is in an amount that includes sums beyond the five-year statute of limits as set forth in Florida Statutes 95.11. (See *Hicks v. Wells Fargo Bank*, N.A., 2015 WL 7017440, 5D14-1748 (Fla. 5th

DCA, November 13, 2015); *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); United States v. Kubrick, 444 U.S. 111, 117 (1979))

125.    A bona fide, actual, present and practical need for a declaration is necessary because enforcement attempts are ongoing and CALIBER is actively contacting GARRISON despite being advised by GARRISON's counsel that it is to cease contact with her.  During CALIBER's enforcement attempts, CALIBER has presented GARRISON with deceptive and tricky papers that if she signed them, she could lose substantial rights.  CALIBER is interfering with GARRISON's right to counsel.

### *Prayer For Relief*

WHEREFORE, GARRISON prays for judgment against CALIBER for Declaratory Relief that:

a.  The Subject Debt, based upon the Note and Mortgage that were presented in the Foreclosure Action, is unenforceable.

b.  The amount of the Subject Debt claimed due is overstated because it includes sums beyond the five-year statute of limits.

c.  CALIBER is not permitted to contact GARRISON or third parties with respect to the Subject Debt.

d.  CALIBER has no right to furnish adverse information regarding the Subject Debt to credit reporting agencies.

## COUNT VII—ACTION FOR VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, CHAPTER 559, FLORIDA STATUTES

126.    This is an action for damages for violation of Florida Statutes §559, *et sequi*, known more commonly as the "Florida Consumer Collection Practices Act" (the "FCCPA") brought herein pursuant to the doctrine of pendant jurisdiction.

127.    Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 58, above as if set forth hereat in full.

128.    At all times material hereto, the Subject Debt constituted a "debt" or "consumer debt" as said terms are defined under Florida Statute §559.55(1).

129.    At all times material hereto, GARRISON was a "debtor" or "consumer debtor" as said terms are defined under Florida Statute §559.55(2).

130.    At all times material hereto, CALIBER was a "debt collector" as said term is defined under Florida Statute §559.55(6).

131.    At all times material hereto, GARRISON has been the "object of collection activity arising from consumer debt" with respect to CALIBER's attempts to collect the Subject Debt.

132.    By virtue of the acts described above and in furtherance of its debt collection activities, CALIBER has violated and continues to violate the FCCPA provisions found in Florida Statutes §§559 *et sequi*, in the following respects:

(a)     disclosed to a person other than GARRISON information affecting the

reputation of GARRISON with knowledge or reason to know the information is

false in contravention of Florida Statute §559.72(5);

(b)     disclosed information concerning the existence of a debt known to be

reasonably disputed by GARRISON without disclosing that fact in contravention

of Florida Statute §559.72(6);

(c)     willfully communicated with GARRISON with such frequency as

can be reasonably expected to harass GARRISON and willfully engaged in

conduct which reasonably can be expected to harass GARRISON in contravention

of Florida Statute §559.72(7);

(d)     claimed, attempted or threatened to enforce a debt when CALIBER knew

that the debt was not legitimate or asserted the existence of a legal right when

CALIBER knew the right does not exist, in contravention of Florida Statute

§559.72(9); and

(e)     communicated with GARRISON as a debtor when CALIBER knew

that GARRISION as a debtor was represented by an attorney with respect to the

the Subject Debt and had knowledge of, or could readily ascertain, such attorney's

name and address, in contravention of Florida Statute §559.72(18).

133.    As a direct and proximate result of the violation of the FCCPA by CALIBER,

GARRISON suffered damage including but not necessarily limited to frustration, irritation, loss

of privacy, loss of access to accurate account information, diminished credit score, mental pain and shock, suffering, aggravation, humiliation and embarrassment in an amount to be proven at trial.

134.   As a direct and proximate result of CALIBER's above-described conduct in violations of the FCCPA, CALIBER is liable to GARRISON for actual damages in an amount to be determined by a jury, together with statutory damages up to the amount of 1,000.00, pursuant to Florida Statute §559.77,

135.   Pursuant to Florida Statute §559.77, GARRISON is entitled to recover reasonable costs and attorney's fees from CALIBER in an amount to be determined by the Court.

136.   As a direct and proximate result of CALIBER's actions, CALIBER is liable for punitive damages in an amount to be determined by a jury.

137.   GARRISON has retained the undersigned law firm to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

### *Prayer For Relief*
### *(§559.77)*

WHEREFORE, Plaintiff, Denise GARRISON, an individual, demands judgment in her favor against Defendants, Caliber Home Loans, Inc., a foreign corporation, for compensatory, statutory and punitive damages, together with interest, costs and attorney's fees pursuant to Florida Statute §559.77.

## DEMAND FOR JURY TRIAL

The Plaintiff, Denise Garrison, an individual, pursuant to Rule 38, Federal Rules of Civil

Procedure, demands a trial by jury of all issues so triable.

**LegalNinja, LLC**

*/s/ Catherine J. Jones*
CATHERINE J. JONES
Florida Bar No.: 0709271
400 Orange St.
Titusville, Florida  32796
(321) 888-2280 Telephone
(321) 400-1192 Facsimile
Email: jones@mylegalninja.com

Counsel for Plaintiff

**Brevard Consumer Law Center**

*/s/ George Gingo*
GEORGE M. GINGO
Florida Bar No.: 879533
400 Orange St.
Titusville, Florida  32796
(321) 264-9624 Telephone
(866) 311-9573 Facsimile
Email: gingo.george@gmail.com

Co-Counsel for Plaintiff