## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DENISE GARRISON,

        Plaintiff,

v.                                               Case No. 6:16-cv-978-Orl-37DCI

CALIBER HOME LOANS, INC.,

        Defendant.

_____

## ORDER

This cause is before the Court on the following:

1.      Defendant's Motion to Dismiss Counts II–VII  of Plaintiff's Complaint with Prejudice (Doc. 19), filed August 1, 2016; and

2.      Plaintiff's Opposition to Defendant Caliber Home Loans, Inc.'s Motion to Dismiss Complaint and Supporting Memorandum of Law (Doc. 21), filed August 15, 2016.

## BACKGROUND

On **June 7, 2016**, Plaintiff Denise Garrison initiated this action against Defendant Caliber Home Loans, Inc. (Doc. 1.)[1] Defendant is the current servicer of a mortgage and a promissory note in the original amount of **$296,000.00** ("**Loan**"), which Plaintiff executed and delivered to Bank of America, N.A. ("**BOA**") in **2008** to purchase her residence ("**Property**"). (*See* Doc. 1, ¶¶ 17, 18, 23, 31, 36, 38; Doc. 18, ¶¶ 17, 18, 38; *see also*

---

[1] Defendant "is a Florida Consumer Collection Agency, License Number CCA9901554," and it provides loan servicing "under National Mortgage Lender Servicer License Number 15622, and Florida Mortgage Lender Servicer License Number MLD473." (Doc. 1, ¶¶ 2, 13, 14; Doc. 18, ¶¶ 13, 14.)

Doc. 1-1, pp. 4–20 ("**Mortgage**"); *id.* at 21–25 ("**Note**").)

Plaintiff claims that certain of Defendant's communications and acts concerning her liability under the Loan violated various provisions of five consumer protection laws: (1) the Telephone Consumer Protection Act ("**TCPA**") (*see* Doc. 1, ¶¶ 59–70 ("**Count One**")); (2) the Fair Debt Collection Practices Act ("**FDCPA**") (*see id.* ¶¶ 71–83 ("**Count Two**")); (3) the Florida Consumer Collection Practices Act ("**FCCPA**") (*see id.* ¶¶ 126–37 ("**Count Seven**")); (4) the Real Estate Settlement Procedures Act ("**RESPA**") (*see id.* ¶¶ 109–19 ("**Count Five**")); and (5) the Fair Credit Reporting Act ("**FCRA**") (*see id.* ¶¶ 84–95 ("**Count Three**"); & 96–108 ("**Count Four**")). Plaintiff also claims entitlement to certain judicial declarations under the Declaratory Judgment Act ("**DJA**") (*see id.* ¶¶ 120–25 ("**Count Six**")). Plaintiff alleges that the Court has jurisdiction over her claims based on federal question and pendant jurisdiction under 28 U.S.C. §§1331 and 1367. (*See id.* ¶ 7.)

Defendant responded to the Complaint by filing an Answer and Affirmative Defenses to Count One (Doc. 18) and moving to dismiss Counts Two through Seven (Doc. 19 ("**Motion**")). Plaintiff responded (Doc. 21 ("**Response**")), and the matter is now ripe for adjudication.

## LEGAL STANDARDS

### I.     Consumer Protection Laws

The "FCCPA is 'a Florida state analogue to the federal FDCPA,'"[2] and both

---

[2] *Rojas v. Law Offices of Daniel C. Consuegra, P.L.*, 142 F. Supp . 3d 1206, 1211 (M.D. Fla. 2015) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010)). The FDCPA and the FCCPA "both relate to consumer protection against creditors, and include nearly identical definitions of 'communication,' 'debt,' and 'debt collector.'" *See Kinlock v. Wells Fargo Bank, N.A.*, 636 F. App'x 785, 787 (11th Cir. 2016).

statutes are intended to eliminate abusive practices used by debt collectors. *See* 15 U.S.C. § 1692a(6)); Fla. Stat. § 579.72. RESPA also protects consumers from "'*certain* abusive practices,'" *see Freeman v. Quicken Loans, Inc.*, 132 S.Ct. 2034, 2044 (2012)), and the "FCRA seeks to ensure fair and accurate credit reporting" *see Spokeo v. Robins*, 136 S.Ct. 1540, 1545 (2016); *see also* 15 U.S.C. § 1681b. Liberally construed in favor of consumer protection,[3] each of these statutes and the TCPA authorize consumers to file private suits against those who violate the statutes by mishandling consumer information or attempting to collect debts from consumers through prohibited acts—particularly acts that are harassing, misleading, deceptive, or false.[4]

## II.   Pleading Requirements

The Federal Rules of Civil Procedure set forth minimum pleading requirements. Rules 8 and 10 require plaintiffs to provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See* Fed. R. Civ. P. 8(a), (d) ("Each allegation must be simple, concise, and direct."); *see also* Fed. R. Civ. P. 10(b). If a complaint fails to state a plausible or legally sufficient claim, the

---

Further, the FCCPA specifies that, in construing its provisions, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." *See* Fla. Stat. § 559.77(5).

[3] *See Agrelo v. Affinity Mgmt., Servs, LLC*, 841 F.3d 944, 950 n.11 (11th Cir. 2016); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016).

[4] *See United States v. Bormes*, 133 S.Ct. 12, 15 (2012).; *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 576, 615 (2010); *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010); *Arianas v. LVNV Funding, LLC*, 132 F. Supp. 3d 1322, 1326 (M.D. Fla. 2015); *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, at *10 (M.D. Fla. Nov. 8, 2013); *Foxx v. Ocwen Loan Servicing, LLC*, No. 8:11-cv-1766-T-17EAK, 2012 WL 2048252, at *5 (M.D. Fla. June 6, 2012) (noting that a private right of action for violation of § 1681s-2(b) is available under the FCRA).

defendant may file a motion to dismiss under Rule 12(b)(6). *See Popham v. Cobb Cty., Ga.*, 392 F. App'x 677, 678 (11th Cir. 2010).

In resolving a Rule 12(b)(6) motion, courts must accept as true all well-pled factual allegations and determine whether the complaint sets forth plausible claims—that is claims with sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing plausibility, courts also must consider the exhibits attached to a complaint, and—when contradictions arise between conclusory allegations and clear exhibits—the exhibits control.[5] *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

## THE COMPLAINT

When Defendant began servicing the Loan on **November 1, 2015**, Plaintiff had been in default since **December 1, 2009** ("**Default**"). (*See* Doc. 1, ¶ 20; Doc. 21, pp. 1, 2, 6, 12.) Based on the Default, BOA filed a foreclosure case—Case Number 05-2010-CA-26735 ("**Foreclosure Case**")—against Plaintiff in the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County, Florida ("**State Court**"). (*See* Doc. 1, ¶¶ 19, 20; Doc. 1-1, pp. 1–3.)

---

[5] With her Complaint, Plaintiff filed partly unreadable copies of the mortgage (*see* Doc. 1-1, pp. 4–20 ("**Mortgage**")), promissory note (*see id.* at 21–25, 27–29 ("**Note**"); *see also id.* at 47)), and other documents. (*See also* Doc. 1, ¶ 9 (incorporating all "Composite Exhibits" filed with the Complaint at Doc. 1-1).) She requests that the Court "take judicial notice of the . . . documents attached" to her Complaint. (Doc. 21, p. 1.) Consistent with controlling law, the Court has considered each exhibit.

Attorney George M. Gingo ("**Attorney Gingo**") represented Plaintiff in the Foreclosure Case. (*See* Doc. 1, ¶ 24.) Contending that BOA could not establish standing to foreclose because the version of the Note filed by BOA—("**Filed Note**")—"more likely than not" included a "fraudulent insertion" at page three ("**Fraudulent Document Issue**"),[6] Attorney Gingo filed a motion for summary judgment ("**SJ Motion**") and a related affidavit ("**Drexler Report**") from forensic document examiner Steven G. Drexler ("**Drexler**").[7] (*See id.*; Doc. 1-1, pp. 31–35 (contending that the court should enter summary judgment against BOA "because as the complaint is currently pled," BOA cannot "prove that it has possession of the original, wet ink promissory note").) Before the State Court ruled on the SJ Motion, BOA successfully moved for return of the Note from the State Court, and it voluntarily dismissed the Foreclosure Case without prejudice on **October 23, 2014** (*see* Doc. 1, ¶¶ 25–27; *see also* Doc. 1-1, pp. 53–54 & 63–64 ("**BOA Dismissal**")).[8] A year after dismissal of the Foreclosure Case, BOA sold the Loan to "LSF9 Master Participation Trust" ("**LSF9 Trust**") (*see* Doc. 1-1, pp. 67–68 ("**Sale Notice**")),[9] and notified Plaintiff that the LSF9 Trust was the new owner and BOA would no longer service the Loan (*see id.* at 65–66 ("**Transfer Notice**")).

---

[6] According to the Complaint: (1) the Note filed by BOA "was a fraudulent document, which was ascertainable from the face" of the document; and (2) the Mortgage "looks similar" to the Note, and bears "the same indicia of fraud on its face." (*See* Doc. 1, ¶¶ 21, 22.) Despite Plaintiff's contrary assertion in her Response, the Complaint includes no factual allegations that Plaintiff did not sign the Note and Mortgage.

[7] The Drexler Report sets forth Drexler's opinion that the third page of the Filed Note is more likely than not "a *fraudulent insertion*." (*See* Doc. 1-1, pp. 40–42.)

[8] Recently, Plaintiff filed a "[s]mall claims illegal debt collection action" against BOA in State Court—Case No. 05-2016-SC-24912 ("**BOA Action**"). (*See* Doc. 5.)

[9] The LSF9 Trust is allegedly an "investment vehicle" used by a global private equity firm—Lone Star Funds ("**LSF**")—for its "mortgage pool purchases." (*See* Doc. 1, ¶ 2.)

On **November 1, 2015**, Defendant began servicing the Loan and allegedly reviewed the Loan's "collateral file" and servicing documents ("**Loan Review**"). (*See* Doc. 1, ¶¶ 17, 18, 23, 31, 36, 38; Doc. 18, ¶¶ 17, 18, 38.) Based on the alleged Loan Review, Plaintiff claims that Defendant knew certain facts at the outset of the servicing arrangement ("**Institutional Knowledge**"), including that: (1) Attorney Gingo represented Plaintiff in relation to the Loan; (2)  Plaintiff disputed the Loan based on the Fraudulent Document Issue; and (3) a portion of the Loan could not be recovered because Florida has a five-year statute of limitations ("**SOL**"), and more than five years had passed since the Default ("**SOL Issue**").[10] (*See* Doc. 1, ¶ 36). Plaintiff further alleges that: (1) she never gave Defendant the number for her cellular phone or "prior express consent" to contact her in any manner; (2) notwithstanding its Institutional Knowledge, Defendant began placing at least fifty collection calls to Plaintiff's cellular telephone ("**Collection Calls**"); and (3) on every completed Collection Call, Plaintiff told Defendant "that she had an attorney and asked [Defendant] to stop calling her." (*See id.* ¶¶ 36, 40–43.)

On **March 14, 2016**, Plaintiff "accessed her Experian credit report and found that" Defendant had reported an inaccurate "amount due" on the Loan and it had failed to note Plaintiff's dispute of the Loan based on the Fraudulent Document Issue ("**CRA Report**"). (*See id.* ¶¶ 54–55; Doc. 1-1, pp. 72–73 (reflecting that the balance of the Note as of

---

[10] Under Florida law, the SOL "does not begin to run until the last payment of the mortgage is due, unless the mortgage contains an acceleration clause." *See Matos v. Bank of N.Y.*, No. 14-21954-CIV, 2014 WL 3734578, at *2 (S.D. Fla. Jul. 28, 2014) (citing *Locke v. State Farm Fire & Cas. Co.*, 509 So. 2d 1375, 1377 (Fla. 1st DCA 1987)). The SOL "may commence earlier on payments not yet due if the holder exercises his or her right to accelerate the total debt because of a default." *See id.* An acceleration triggered by a foreclosure action is decelerated by dismissal of the foreclosure action. *See id.* (citing *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1008 (Fla. 2004). Here, the allegations of the Complaint and the attached exhibits leave the acceleration issue entirely unclear.

February 2016 was **$400,334.00**, and the "past due" amount was **$183,247.00**).) Two weeks later, Plaintiff disputed the CRA Report in writing to the CRA and Defendant. (*See* Doc. 1, ¶ 56.) Specifically, Plaintiff complained to Experian that: (1) the reported balance of $400,334.00 "includes sums due more than five years ago and the [SOL] has passed on the collection of those sums;" and (2) the Loan should not be reported "at all because [Plaintiff] was in foreclosure on this debt and [she] won . . . ." (*See* Doc. 1-1, p. 74 ("**Dispute Notice**").) Despite the Dispute Notice, Plaintiff alleges that Defendant: (1) "failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information" about Plaintiff and the Loan; and (2) "asserted that it was furnishing accurate information" to the CRAs "and that no changes would be made." (*See* Doc. 1, ¶¶ 56–58, 85, 91; Doc. 1-1, pp. 72–73.)

In **March 2016**, Defendant sent a mortgage statement ("**March Statement**") to Plaintiff, which advised that: (1) the "Past Due Amount" on the Loan was **$184,401.84**; (2) the "Amount Due" (including fees and uncollected late charges) was **$188,099.70**; (3) the "Outstanding Principal" was **$292,143.23**; and (4) the "Maturity Date" for the Loan is **October 1, 2038**. (*See* Doc. 1-1, pp. 69–71.) The March Statement also included the following "Delinquency Notice" and "Important Messages"—

**Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 03/18/2016, you are 2298 days delinquent on your mortgage.

**Total Payment Due: $188,099.70**
If you are Experiencing Financial Difficulty: See back for information about mortgage counseling or assistance.

**Important Messages**

This is an attempt by a debt collector to collect a consumer debt and any information obtained will be used for that purpose.

*Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

We show that your loan has been referred to Foreclosure.

(*See id.*) According to Plaintiff: (1) Defendant's assertions that Plaintiff was "2299 days delinquent on [her] mortgage" and owes a $188,099.70 payment are false due to the SOL Issue; and (2) Defendant's statement that Plaintiff's Loan had "been referred to Foreclosure" also was false because no foreclosure case had been filed against Plaintiff since Defendant began servicing the Loan. (*See* Doc. 1, ¶¶ 44, 50, 51, 53; *see also* Doc. 18, ¶ 53).

In early **April 2016**, Attorney Gingo sent correspondence to Defendant (Doc. 1-1, pp. 75–76 ("**RESPA Letter**")), which: (1) provided Loan Dispute and error notices concerning the Loan; (2) requested Loan validation and information; and (3) advised that Attorney Gingo represented Plaintiff and further direct contact with Plaintiff must cease. (*See id.*; *see also* Doc. 1, ¶¶ 45, 46, 47; Doc. 18, ¶ 45). After acknowledging receipt of the RESPA Letter (*see* Doc. 1-1, pp. 77–79 ("**RESPA Acknowledgments**"); *id.* at 80 ("**FDCPA Acknowledgment**")), Defendant: (1) dispatched agents to the Property to communicate with Plaintiff and her son about the Loan (*see* Doc. 1, ¶¶ 50–51; and (2) "posted papers purporting to be loan modification documents on [Plaintiff's] door" (*see id.* ¶ 52; Doc. 1-1, pp. 83–86 ("**Posted Documents**")); and (3) sent another mortgage statement to Plaintiff, which included updated account information, Delinquency Notice, and Important Messages sections (*see* Doc. 1-1, at 87–89 ("**April Statement**")).

Plaintiff alleges that Defendant's actions caused her "mental and emotional pain," "loss of privacy, diminished credit score," "embarrassment," "loss of credit," and "credit denial." (*See id.* ¶¶ 80, 92, 106, 116, 133.) Plaintiff further alleges that Defendant is liable to her for actual, statutory, and punitive damages, costs, and attorney fees. (*See id.* ¶¶ 81, 82, 93, 107, 117, 118, 134, 135, 136.)

**DISCUSSION**

Defendant first argues that Counts Two through Seven of the Complaint fail to the extent they are premised on the Fraudulent Document and SOL Issues because: (1) Plaintiff's allegations concerning the Fraudulent Document Issue are untimely, "conclusory, and unsubstantiated [as] this issue was *never* adjudicated by any court" ("**Fraudulent Document Argument**"); and (2) allegations concerning the SOL Issue reflect Plaintiff's impermissible attempt "to bootstrap an affirmative defense into an affirmative cause of action" ("**SOL Argument**"). (*See* Doc. 19, pp. 1–7.) Defendant further argues that:

> (1) Counts Three and Four fail because Plaintiff simply parroted FCRA provisions ("**FCRA Argument**") (*see id.* at 9, 10);
>
> (2) Count Five fails because Plaintiff did not properly allege that Defendant's RESPA violation caused Plaintiff "actual harm" ("**RESPA Argument**") (*see id.* at 10); and
>
> (3) any claims in Counts Two and Seven concerning pre-April 5, 2016 communications fail because Plaintiff's "own recital of the dates and events contradict" her assertions that Defendant knew or had reason to know about Attorney Gringo before receipt of the RESPA Letter in April 2016 ("**Knowledge Argument**") (*see id.* at 8, 9, 11, 12).

Plaintiff counters that Defendant misunderstands the nature of her claims, which are adequately pled and supported by the law. (*See* Doc. 21, pp. 5–7.)

## I.     FDCPA & FCCPA Claims (Counts II & VII)

The FCCPA and FDCPA regulate—in significant detail—whom a debt collector may contact concerning a consumer debt and when, where, and how a debt collector may communicate with a debtor and other persons. *See Parker v. Midland Credit Mgmt., Inc.*,

874 F.Supp.2d 1353, 1355 (M.D. Fla. 2012) (explaining that the FDCPA "prohibits the use of . . . abusive measures . . ., and bans the use of false, deceptive, . . . unfair, or unconscionable means of collecting a debt"). To state a claim for violation of the FDCPA and FCCPA, Plaintiff must set forth sufficient factual allegations to raise plausible inferences that: (1) Defendant is a debt collector; (2) Plaintiff was "the object of collection activity arising from consumer debt;" and (3) Defendant engaged in an act or omission prohibited by the FDCPA or FCCPA.[11]

Here, Plaintiff alleges that: (1) Defendant is a debt collector; (2) she was subjected to collection activity arising from the Loan; and (3) Defendant engaged in a plethora of acts and omissions prohibited by the FDCPA and FCCPA. For instance, Plaintiff alleges that Defendant violated:

    i.      15 U.S.C. § 1692c(a)(2) and Florida Statutes, § 559.72(18) by communicating with Plaintiff about the Loan when: (1) Defendant knew that Plaintiff was represented by Attorney Gingo with respect to the Loan; (2) Attorney Gingo's contact information was known or readily ascertainable to Defendant; and (3) Attorney Gingo had not consented to direct communication with the consumer (*see* Doc. 1, ¶¶ 79(c), 132(e));

    ii.     Florida Statutes, § 559.72(7) by engaging in conduct and repeatedly communicating with Plaintiff in a manner reasonably expected to harass Plaintiff (*see id.* ¶ 132(c));

    iii.    15 U.S.C. § 1692c(c) by communicating with Plaintiff about

---

[11] *See Dayhoff v. Wells Fargo Home Mortg., Inc.*, No. 6:13-cv-1132-Orl-37KRS, 2013 WL 6283583, at *2 (M.D. Fla. Dec. 4, 2013) (quoting *Kennedy v. Nat'l Asset & RiskHW 5LVA Mgmt., LLC*, No. 3:13-cv-101-J-12MCR, 2013 WL 5487022, at *2 (M.D. Fla. Sept. 30, 2013)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). In assessing whether a particular communication or act is prohibited, the U.S. Court of Appeals for the Eleventh Circuit applies the least-sophisticated-debtor standard, which is an objective test. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F.Supp.3d 1294, 1303–04 (M.D. Fla. 2016).

prohibited topics after she notified Defendant "in writing" that Defendant's communications with her concerning the Loan must cease (*see id.* ¶¶ 79(e));

iv.     15 U.S.C. §§ 1692b(2) and (6) by communicating with Plaintiff's minor son after Defendant learned that Plaintiff was represented by Attorney Gingo and mentioning the Loan to Plaintiff's son in communications about Plaintiff's location (*see id.* ¶¶ 79(a), (b));

v.      15 U.S.C. § 1692c(b) by communicating with CRAs and Plaintiff's son outside efforts to acquire Plaintiff's location information (*see id.* ¶¶ 79(d), (f), (g));

vi.     15 U.S.C. § 1692e by falsely communicating to Plaintiff—in the March and April Statements, the Posted Documents, and a payoff notice—the amount she owed and by falsely inferring that Defendant was legally entitled to enforce the Note and Mortgage (*see id.* ¶¶ 79(h), (i), (j), (k), (l), (n), (u), (v), (w), (x), (y));

vii.    15 U.S.C. §§ 1692e(2)(A) and (8) by failing to disclose and falsely representing to CRAs and Plaintiff's minor son the correct amount and legal status of the Loan (*see id.* ¶¶ 79(o), (p), (q), (r));

viii.   Florida Statutes, §§ 559.72(5) and (9) by disclosing information concerning Plaintiff's credit reputation and attempting to enforce the Loan even though Defendant knew or had reason to know that the disclosed information was false, the Loan was not legitimate, and Defendant had no right to enforce the Loan (*see id.* ¶¶ 132(a), (d));

ix.     15 U.S.C. § 1692f by falsely asserting in the Posted Documents and in the March and April Statements that the Loan was "referred to Foreclosure" (*see id.* ¶¶ 79(cc), (dd), (ee)); and

x.      15 U.S.C. §§ 1692e(10) and 1692g(b) by failing to verify the amount and validity of the Loan (*see id.* ¶¶ 79(aa), (ff)).

Initially, the Court notes that Counts Two and Seven fall short of minimum pleading requirements because both reflect impermissible shotgun pleading and confusingly group numerous distinct statutory violations together. For these reasons alone, Counts Two and

Seven are due to be dismissed.[12] *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.") Nonetheless, to facilitate the parties' efforts to prosecute this action, the Court will address Defendant's Knowledge, Fraudulent Document, and SOL Arguments.

## A.    Knowledge Argument

Plaintiff's allegations concerning Defendant's Institutional Knowledge and Plaintiff's verbal statements during the Collection Calls are sufficient to raise a plausible inference that Defendant had the requisite knowledge concerning Attorney Gingo before receipt of the RESPA Letter. Accordingly, the Court rejects Defendant's Knowledge Argument and finds that Plaintiff may assert viable claims against Defendant under the FDCPA and FCCPA. (*See* Doc. 1, ¶¶ 79(a), (b), (c), (e), (aa), (ff); *id.* ¶ 132(e).)

## B.    Fraudulent Document Arguments

In its Fraudulent Document Arguments, Defendant contends that Plaintiff cannot base her claims on the Fraudulent Document Issue because: (1) such claims are untimely[13] (*see* Doc. 19, p. 4); (2) Plaintiff's factual allegations concerning the Drexler Report "are not even indicative of fraud" and "[t]here has not been *any adjudication by*

---

[12] Plaintiff's shotgun pleading style is prohibited by the Eleventh Circuit. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015) (dismissing shotgun pleading); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127–28 (11th Cir. 2014) (criticizing district court for failing to police shotgun pleadings); *Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). Although Plaintiff also incorporates Paragraphs 1 through 58 by reference in Counts Two, Six, and Seven, these Counts provide additional specific factual allegations; thus, these Counts need not be dismissed based on the Eleventh Circuit's shotgun pleading rules.

[13] Because Defendant did not begin servicing the Loan until November 2015, and Plaintiff's claims arise from Defendant's conduct after that date, the Court rejects Defendant's statute of limitations argument.

*any court* that the Note or Mortgage were forged or fraudulent"[14] (*id.* at 3); and (3) Plaintiff's allegations that she executed and delivered Loan documents to BOA "are directly in conflict with her assertion that her loan documents were fraudulent" (*id.*). (*See* Doc. 1, ¶¶ 17, 18, 23, 31, 36, 38; Doc. 18, ¶¶ 17, 18, 38; *see also* Doc. 21, p. 1.)

Plaintiff counters that the Fraudulent Document Issue supports her claims because: (1) she is "essentially enforcing her right to 'presentment'" under Florida Statutes, § 673.5011; and (2) if Defendant cannot meet the requirements to enforce the Loan under Florida Statutes, §§ 673.3011 or 673.3091, "then its debt collection attempts . . . must necessarily be illegal." (*See* Doc. 21, pp. 8–9.) The Court disagrees with both of Plaintiff's unsupported and confusing arguments.[15] Even construed broadly, neither the FDCPA nor the FCCPA provide authority for Plaintiff to demand: (1) "presentment" from a mere debt collector; or (2) premature compliance with the standing and proof requirements of a foreclosure action. *See Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 636 (11th Cir. 2015) (noting the absence of authority to support the proposition that Florida law requires production of an original note "outside of a foreclosure proceeding"). Accordingly, the Fraudulent Document Issue does not provide a plausible basis for Plaintiff's claims.[16]

---

[14] The Court agrees with Plaintiff that a prior judicial determination of fraud is not a prerequisite to Plaintiff's claims based on the Fraudulent Document Issue.

[15] Plaintiff cites no authority to support the proposition that Florida Statutes, § 673.5011 may be enforced through the provisions of the FDCPA or FCCPA. Similarly, Plaintiff has cited no authority to support the proposition that Florida Statutes, §§ 673.3011 and 673.3091 are pertinent outside of a foreclosure action. (*See* Doc. 21.) To the contrary, Plaintiff's cited authority concerns a foreclosure plaintiff's obligation to establish standing "at the time of trial" and when it files a foreclosure complaint. (*See id.* at 8 (discussing *Kiefert v. Nationstar Mortg., LLC*, 153 So. 3d 351, 352 (Fla. 1st DCA 2014)).)

[16] Although Plaintiff's Complaint is unclear, it appears that the following paragraphs

### C. SOL Argument

Defendant's SOL Argument is that Plaintiff cannot base her claims on the SOL Issue because: (1) the statute of limitations is "a defense, not an affirmative cause of action;" (2) unlike a "statute of repose," a statute of limitations does not terminate a lien or extinguish a claim;[17] and (3) the applicability of any statute of limitations cannot be resolved before a legal action is brought to enforce the Loan. (*See* Doc. 19, pp. 5–6.) Plaintiff counters these persuasive and well-founded arguments based on an FTC publication and distinguishable Eleventh Circuit cases. (*See* Doc. 21, pp. 10–12 (arguing that no "leap" is required "to find that a billing statement that attempts to collect a sum certain from a consumer, wherein the sum certain includes unenforceable sums, and that also claims to have taken legal action which can only be avoided by the consumer's remittance of the sum certain" is coercive and misleading).)

The FTC publication quoted by Plaintiff does provide that it is "'against the law for a collector to sue you *or threaten to sue you on a time-barred claim*.'" (*See id.* at 12 (quoting "Time-Barred Claims," which is available on the FTC's website at https://www.consumer.ftc.gov/articles/0117-time-barred-debts ("**FTC Publication**")).) But the FTC Publication also advises consumers that:

---

of Counts Two and Seven are based on the Fraudulent Document Issue: ¶¶ 79(f), (h), (j), (n), (o), (p), (q), (s), (u), (w), (ee), and ¶¶ 132(b), (d).

[17] This is an accurate statement of Florida law. *See Countrywide Home Loans, Inc. v. Burnette*, 177 So. 3d 1032, 1033–34 (Fla. 1st DCA 2015) (noting that the running of Florida's five-year SOL does not affect the validity of a property lien, which "remains valid until five years after the maturity date of the debt secured by the mortgage"); *Danielson v. Line*, 185 So. 332, 333 (Fla. 1938) (noting that a SOL only affects "the remedy for collecting the note[, but it] in no wise affects the debt or the obligation the note represents"); *see also Singleton*, 882 So. 2d at 1008.

- "[t]he statute of limitations for a debt is usually different from the reporting period for a debt on your <u>credit</u> <u>report</u>. In general, negative information stays on your credit report for seven years;"

- debt collectors "are allowed to contact you about time-barred claims;" however, if asked by a consumer whether a debt is beyond the SOL, "the law requires" that any answer from the debt collector must "be truthful;" and

- the "decision to pay a time-barred debt is up to [the consumer]."[18]

These seemingly inconsistent statements in the FTC Publication simply do not support Plaintiff's reliance on the SOL Issue to support her claims.

The Eleventh Circuit cases that Plaintiff primarily relies on—*Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1844 (2015) and *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016), *cert. granted*, 137 S. Ct. 326 (2016)—are similarly unavailing because neither concern non-judicial debt collection activity of a partially time-barred claim. Rather, for reasons peculiar to bankruptcy proceedings, the *Crawford* and *Johnson* courts held that bankruptcy debtors can assert FDCPA adversary proceedings based on a creditor's filing of a proof of claim that is entirely unenforceable under the applicable statute of limitations. Absent some authority supporting Plaintiff's arguments in the context of this action,[19] the Court finds

---

[18] *See also See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (noting that it is appropriate for a debt collector to request voluntary repayment of a time-barred debt).

[19] The Court notes that a decision has issued from this District, which found that a dunning letter that "failed to exclude from the amount due the monthly installment payments that exceeded five years" was "sufficient to establish" at the pleading stage that "the letter may have been deceptive or misleading to the least sophisticated consumer." *See Sanchez v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:15-cv-2714-T-30UAM, 2016 WL 3126515, at *2 (M.D. Fla. June 3, 2016). The Court is not persuaded by this decision because the unpublished state law case relied upon by the court for its SOL analysis—*Collazo v. HSBC Bank USA, N.A.*, No. 3D14-2208, 2016 WL 1445419 (Fla. 3d DCA Apr. 13, 2016)—has been withdrawn. *See Collazo v. HSBC Bank USA,*

that the SOL Issue does not provide a plausible basis for Plaintiff's claims.[20] Instead, the

SOL Issue should be raised—if at all—as an affirmative defense to an actual collection

or foreclosure action.[21]

## II.     FCRA Claims (Counts Three and Four)

The FCRA creates private rights of action against those who willfully or negligently

violate certain FCRA requirements when furnishing consumer information to credit

reporting agencies ("**CRA**").[22] *See* 15 U.S.C. §§ 1681n, o, p. Specifically, furnishers of

information violate FCRA requirements by furnishing any CRA with: (1) "information

relating to a consumer" when the furnisher of information "knows or has reasonable cause

to believe that the information is inaccurate" (*id.* § 1681s-2(a)(1)(A)); and (2) inaccurate

consumer information after receiving notice from a consumer "that specific information is

inaccurate" (*id.* § 1681s-2(a)(1)(B)). Further, when a furnisher of information determines

that information it has provided to a CRA "is not complete or accurate," the furnisher must:

> promptly notify the [CRA] of that determination and provide to
> the [CRA] any corrections to that information, or any additional
> information, that is necessary to make the information
> provided by the person to the [CRA] complete and accurate,
> and shall not thereafter furnish to the agency any of the
> information that remains not complete or accurate.

15 U.S.C. § 1581s-2(a)(2).

---

*N.A.*, No. 3D14-2208, 2016 WL 6246446 (Fla. 3d DCA Oct. 13, 2016).

[20] To the extent Plaintiff's FCRA and RESPA Claims are based on the SOL and Fraudulent Document Issues, the Court finds that such theories do not support plausible claims. (*See supra* DISCUSSION, Parts I.B. & I.C.)

[21] Again, despite the unclear pleading, it appears that the following paragraphs of Counts Two and Seven are based on the SOL Issue: ¶¶ 79(h), (i), (j), (k), (l), (n), (u), (v), (w), (x), (y) and ¶¶ 132(a), (d).

[22] A "willful" violation covers violations "committed in reckless disregard" of a defendant's obligations under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 561 U.S. 47, 52 (2007).

In Counts Three and Four, Plaintiff contends that Defendant is liable for willfully and negligently violating § 1681s-2 concerning unspecified "delinquency information." (*See id.* ¶¶ 84–108.) Upon review, the Court agrees with Defendant that these claims fail because: (1) aside from the wholesale incorporation by reference of paragraphs 1 through 58, Plaintiff provided no well-pled factual allegations in Counts Three and Four (*see id.* ¶¶ 85, 97); and (2) Plaintiff simply parroted certain provisions of the FCRA (*see* Doc. 1, ¶¶ 84–119). Thus, Counts Three and Four are due to be dismissed due to Plaintiff's impermissible shotgun pleading style.

## III.    RESPA Claims (Count Five)

RESPA obligates furnishers of information to promptly (not later than 30 days after receipt of a qualified written request ("**QWR**")): (1) "make appropriate corrections in the account of the borrower" 12 U.S.C. § 2605(e)(2)(A); or (2) "after conducting an investigation, provide the borrower with a written explanation or clarification" ("**RESPA Response**"), which provides either—(a) "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" (*id.* § 2605(e)(2)(B)(i)); or (b) "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer" (*id.* § 2605(e)(2)(B)(ii)). In addition, for 60 days after receipt of a QWR that relates "to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment . . . to any [CRA]." *See id.* § 2605(e) (3). In Count Five, Plaintiff claims that Defendant did not fulfill these RESPA obligations.

Defendant argues that the Court should dismiss Count Five because Plaintiff did not properly allege that Defendant's purported RESPA violations caused her "actual

harm." (Doc. 19, p. 10 (asserting that Count Five "must be dismissed for failure to put forth more than conclusory allegations . . . .").) Plaintiff provided no response to this argument; instead, her defense of Count Five confusingly references Plaintiff's "contractual cure and reinstatement rights and her statutory redemption rights." (*See* Doc. 21, pp. 16–17.)

Like Counts Three and Four, Count Five simply parrots certain statutory provisions and indiscriminately incorporates by reference paragraphs 1 through 58. (*See* Doc. 1, ¶¶ 109–18.) In the context of such obtuse allegations, Plaintiff's responses to Defendant's RESPA Argument make no sense. (*See* Doc. 21, pp. 16–17.) In contrast, Defendant's argument that Count Five is conclusory and insufficiently pled is well-founded. Thus, Defendant's request to dismiss Count Five is due to be granted.

## IV.   DJ Act Claim (Count Six)

The DJ Act authorizes federal district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" only in "a case or actual controversy within its jurisdiction." *See* 28 U.S.C. §2201(a).[23] The DJ Act "does not establish federal jurisdiction on its own." *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928, 932 (11th Cir. 2016). Further, courts "may discretionarily decline to exercise jurisdiction over a declaratory-judgment

---

[23] "As part of the case-or-controversy requirement, a plaintiff must establish that [she] has 'standing' to invoke the power of a federal court to decide the merits of a particular dispute." *See Esteves*, 615 F. App'x at 635. Specifically, plaintiffs must show: "(1) they personally have suffered a concrete 'injury in fact'—some actual or imminent invasion of a legally protected interest; (2) that a causal connection exists between the injury and the conduct complained of—that is, the injury fairly must be traceable to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *See id.*

action even if subject-matter jurisdiction requirements otherwise are met." *See Esteves*, 615 F. App'x at 637 n.2.

In Count Six, Plaintiff requests that the Court issue four judicial declarations to address Defendant's "ongoing" attempts to collect on the Loan and interfere with Plaintiff's right to counsel. (*See* Doc. 1, ¶ 125.) Two of the proposed declarations parrot the Fraudulent Document and SOL Issues, requesting judicial declarations that: (1) the "Subject Debt, based upon the Note and Mortgage that were presented in the Foreclosure Action, is unenforceable;" and (2) "[t]he amount of the Subject Debt claimed due is overstated because it includes sums beyond the five-year [SOL]."[24] (Doc. 1, p. 34.)

As explained above, the SOL Issue should be raised—if at all—as an affirmative defense to an actual collection or foreclosure action. (*See supra* DISCUSSION, Part I.C.) The SOL Issue does not belong in this action—whether raised in the context of a consumer protection act violation or as a request for declaratory relief. *See First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217 (11th Cir. 1983) (finding no basis for the exercise of jurisdiction over a DJ Act claim seeking to resolve what would be asserted as an affirmative defense to a foreclosure action). The Fraudulent Document Issue is similarly unfit for resolution by declaratory relief because it is premature and would redress no injury currently faced by Plaintiff. *See Esteves*, 615 F. App'x at 635 (finding that mortgagors lacked standing to request a judgment declaring that the

---

[24] Because both of these issues present questions of state law, and the Complaint includes no allegations to support diversity jurisdiction, the Court assumes that Plaintiff relies on pendant jurisdiction in seeking these two declarations. (*See* Doc. 1, ¶ 7.) Such reliance is suspect, and the Court would exercise its discretion to decline to exercise jurisdiction over these requests. *See Esteves*, 615 F. App'x at 637 n.2.

mortgage servicer violated RESPA and FDCPA by failing to produce documents establishing valid title to the mortgage).

Plaintiff's remaining requests are for declarations that: (1) Defendant "is not permitted to contact [Plaintiff] or third parties with respect to the Subject Debt"; and (2) Defendant "has no right to furnish adverse information regarding the Subject Debt to [CRAs]." (Doc. 1, p. 34.) These requests simply seek a judicial restatement of what is already set forth in statutes. If such relief were appropriate, it would be provided for under the FDCPA, FCCPA or RESPA. It is not, so the Court declines to exercise its discretion to consider the equitable relief of a declaratory judgment. *See Esteves*, 615 F. App'x at 634.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1)     Defendant's Motion to Dismiss Counts II–VII of Plaintiff's Complaint with Prejudice (Doc. 19) is **GRANTED IN PART AND DENIED IN PART** in the manner set forth in this Order.

(2)     Counts Two through Seven of the Complaint (Doc. 1) are **DISMISSED WITHOUT PREJUDICE**.

(3)     On or before **Friday**, **January 20, 2017**, Plaintiff may file an Amended Complaint.

(4)     If Plaintiff does not file an Amended Complaint by this deadline, the action will proceed solely on Count One of the Complaint (Doc. 1).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 9, 2017.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record